UNITED STATES DISTRICT COURT FOR THE DISTRICT OF VERMONT

SCOTT TRAUDT,

    Plaintiff,

vs.

DAIMLER CHRYSLER MOTORS COMPANY LLC,
PERFORMANCE MARKETING, INC.,
DAVID CICOTTE,
MECHANICS JOHN DOES 1-4,

    Defendants

Civil Action File No. 1:04-CV-53



## MOTION TO DISMISS PLAINTIFF'S RICO CLAIMS AGAINST PERFORMANCE MARKETING, INC., AND DAVID CICOTTE

NOW COME Performance Marketing, Inc. and David Cicotte, defendants in the above entitled action, by and through their attorneys, Miller Faignant & Behrens, P.C., and moves to dismiss the RICO claims against them for failure to state a RICO claim upon which relief can be granted pursuant to Rule 12(b)(6). In support of this motion, defendants submit the following memorandum of law.

## MEMORANDUM OF LAW

Plaintiff Scott Traudt is a Vermont resident. He has filed a RICO suit against Performance Marketing, Inc. [Performance] and David Cicotte. Plaintiff claims personal jurisdiction over Performance Marketing, Inc. and David Cicotte under RICO violations of law. For reasons hereinafter set forth, plaintiff has failed to state a RICO claim against Performance and David Cicotte. Plaintiff has not pleaded any other federal jurisdiction over Performance and Cicotte.

*Handwritten margin annotation by Judge:* The "RICO" allegations in the First Amended Complaint are conclusory and do not support a RICO cause of action. See generally Watral v. Silvernails Farm, 51 Fed. Appx. 62 (2d Cir. 2002). Motion GRANTED absent timely objection. Dated at Brattleboro, Vermont this ___ day of August, 2004. /s/ J. Garvan Murtha, U.S. District Judge

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
RUTLAND, VERMONT 05702

Page 1 of 18



UNDERLYING FACTS

According to Scott Traudt, he purchased a 2003 Dakota [pickup] truck on February 2, 2003 from Miller Volkswagen-Dodge, a subsidiary of Performance Marketing, Inc. He claims that his truck was manufactured with multiple defects. Because of the defects he brought it back to the selling dealership which "replaced virtually the entire front end" but did not inform him that it had also replace other front end components. In particular, he claims that his fuel pump was replaced three times; his brake rotors did not last beyond 8,000 miles; his right front drive axle was replaced; and that some repairs at the dealership were negligently done. As a result of the manufacturing defects, he claims that his pickup "shut down the vehicle at a truck stop on December 25, 2003, causing Traudt and Traudt's wife to lose Christmas with family in Connecticut" and "the radio doesn't work, either."

ALLEGED VIOLATIONS BY RICO DEFENDANTS

Defendants Performance Marketing, Inc and David Cicotte move to dismiss plaintiff's RICO claim on the basis that plaintiff has failed to properly allege that defendants (1) engaged in a pattern of racketeering activity and (2) conducted a RICO enterprise. The law that has developed surrounding the RICO statutes is clear that in order to establish a "racketeering activity," the plaintiff must allege a predicate act. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir.1999) (quoting *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 389 (6th Cir.1996)). "Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) as including any act "indictable" under certain enumerated federal criminal statutes, including 18 U.S.C. § 1343, which makes wire fraud a crime. *Central Distributors of Beer, Inc. v. Conn*, 5 F.3d 181, 183 (6th Cir.1993). Plaintiff's complaint fails to properly plead a wire fraud crime under Rule 9(b)..

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
RUTLAND, VERMONT 05702

Plaintiff's complaints against Performance Marketing, Inc. and David Cicotte are of a conclusory nature and fail to satisfy the requirements of Rule 9(b). For example, plaintiff states that, "Miller Dodge and Performance's other automotive units have a history of shoddy work, overcharging, and negligence." That "Cicotte has command and control over Performance policies, and knew or should have known that [John] Does did defective work on Traudt's Dakota." That Cicotte "knew or should have known that vehicles at Performance units were being sold as 'used' when in fact they had been wrecks." That Cicotte "knew or should have known that predatory sales techniques were being used at Performance dealerships, to include altering sales agreements and bad faith negotiations." That Cicotte "knew or should have known that Dakotas and Durangoes were inherently defective and dangerous by the sheer volume of repairs and/or complaints received by drivers of Dakotas and Durangoes." Plaintiff states that David Cicotte was "a principal in Performance, a manager of Miller Auto Group, and a key policymaker for Performance and Mechanics John Does 1-4." He alleges that "staff turnover at Cicotte-managed dealerships is enormous." Plaintiff alleges that all the defendants "acted with profound contempt for the lives of the North American public."

Based upon these vague and conclusory allegations, plaintiff attempts to state a RICO claim. He alleges that Performance and Cicotte have "used radio, television, and internet modes of transmission to facilitate his criminal enterprise across contiguous state borders." However, the complaint utterly fails to establish any wire fraud crime. It is completely devoid of any particulars about what statements transmitted on the radio, television or Internet were false or misleading; (ii) explain why the statements were fraudulent; (iii) state when and where the statements were made;

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
UTLAND, VERMONT 05702

Page 3 of 18

and (iv) identify the speaker or speakers. See *Allen v. New World Coffee, Inc.*, 2001 WL 293683, 4 (S.D.N.Y.) (S.D.N.Y.,2001), *infra.*. Nor does the complaint allege how he was defrauded by the radio, television and Internet communications, or identify the direct damages caused by the alleged fraud. *Paycom Billing Services, Inc. v. Payment Resources Intern.*, 212 F.Supp.2d 732, 736 (W.D.Mich.,2002) ("Fraud connected with mail or wire fraud must involve misrepresentations or omissions flowing from the defendant to the plaintiff. *Central Distributors of Beer*, 5 F.3d at 184. It is not sufficient to allege that unidentified persons associated with AmTrade made representations."). *U.S. v. Rico Industries, Inc.*, 854 F.2d 710, 712 (C.A.5 (Tex.), 1988) ("In addition, the scheme to defraud must be aimed at the property rights of the victim. *McNally v. United States*, --- U.S. ----, ----, 107 S.Ct. 2875, 2880-81, 97 L.Ed.2d 292 (1987).").

In addition, the complaint fails to allege essential allegations that he relied upon the radio, television or Internet communications and suffered direct damages. *Paycom Billing Services, Inc. v. Payment Resources Intern.*, 212 F.Supp.2d 732, 736 (W.D.Mich., 2002) ("Fraud connected with mail or wire fraud must involve misrepresentations or omissions flowing from the defendant to the plaintiff. *Central Distributors of Beer*, 5 F.3d at 184.").

> Additionally, plaintiffs failed to plead the reliance requirement imposed by *Summit Properties, Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556 (5th Cir.2000). Thus, even if plaintiffs adequately plead a violation of the federal mail or wire fraud statutes, as RICO plaintiffs they are required to plead an additional element not necessary under the statutes as codified. Although reliance is not an element of statutory mail fraud or statutory wire fraud, the court held that reliance on predicate mail or wire fraud is necessary in order to establish proximate causation. *Id.* at 562. *In re MasterCard*

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
RUTLAND, VERMONT 05702

*Intern. Inc., Internet Gambling Litigation*, 132 F.Supp.2d 468, 495 -497 (E.D.La., 2001).

Absent these essential allegations, the plaintiff's RICO complaint is fatally defective and he lacks standing to bring a RICO claim.

Therefore, "a RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by [reason of] the conduct constituting the violation." " *Holmes v. Securities Investor Protection Corp., et al.* 503 U.S. 258, 279, 112 S.Ct. 1311, 1323, 117 L.Ed.2d 532 (1992)(O'Connor, J. concurring) (*citing Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985)). The United States Supreme Court has rejected the proposition that the "by reason of" limitation in 1964(c) requires a simple showing that the defendant's violation of § 1962 was a "but for" cause of plaintiff's injury and has instead instructed that defendant's violation of § 1962 be the proximate cause of plaintiff's injury. *Holmes v. Securities Investor Protection Corp., et al.* 503 U.S. 258, 265-66, 112 S.Ct. 1311, 1316, 117 L.Ed.2d 532 (1992); *See also Whalen v. Carter*, 954 F.2d 1087, 1091 (5th Cir.1992) ("a plaintiff has statutory standing to bring a claim so long as the defendants' predicate acts constitute both factual and proximate cause of the plaintiff's alleged injury"). *In re MasterCard Intern. Inc., Internet Gambling Litigation*, 132 F.Supp.2d 468, 495 -497 (E.D.La., 2001).

## VIOLATION OF 18 USCS § 4 IS NOT A VIABLE PREDICATE ACT

Plaintiff alleges that he brings his action pursuant to 18 USCS § 4 (Misprision of a felony). It is difficult to understand how a violation of 18 USCS 4 could serve in this case as the predicate act for a RICO claim. In *Jones v. Ada S. McKinley Community Services*, 1989 WL 105231, 2 (N.D.Ill.) (N.D.Ill., 1989) the court considered that statute and held that a violation of the statute

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
RUTLAND, VERMONT 05702

would not support a RICO claim. ("defendants argue that violations of 18 U.S.C. §§ 2, 3, 4, and 1952(B) are not RICO predicate acts as defined by 18 U.S.C. § 1961(1). ... We agree and accordingly dismiss all RICO claims based upon violations of the subject statutes.").

Thus, plaintiff has utterly failed to establish a predicate act and his RICO complaint is fatally defective. *Paycom Billing Services, Inc. v. Payment Resources Intern.*, 212 F.Supp.2d 732, 735 (W.D.Mich., 2002) ("In order to establish a "racketeering activity," Plaintiff must allege a predicate act.").

STANDARD OF REVIEW AND PURPOSE OF A MOTIoN TO DISMISS A RICO CLAIM

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir.1989). The court must view all facts alleged in the complaint, as well as any reasonable inferences drawn from those facts, in the light most favorable to the plaintiff. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996); *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992). Any ambiguities are likewise resolved in the plaintiff's favor. *Dawson*, 977 F.2d at 372. A complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts warranting relief. *Triad Assocs.*, 892 F.2d at 586.

However, it has been said that it is proper for a court when considering RICO claims to be cognizant of the harshness of the RICO statutes and the harm that might affect the reputation of a legitimate business so that the court might flush out frivolous claims.

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
RUTLAND, VERMONT 05702

Page 6 of 18

In considering RICO claims, courts must attempt to achieve results "consistent with Congress's goal of protecting legitimate businesses from infiltration by organized crime." *United States v.. Porcelli*, 865 F.2d 1352, 1362 (2d Cir.1989). "Because the 'mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." ' *Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 346 (S.D.N.Y.1998). In ensuring that "RICO's severe penalties are limited to enterprises consisting of more than simple conspiracies to perpetrate the acts of racketeering ... courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Id. Allen v. New World Coffee, Inc.*, 2001 WL 293683, 3 (S.D.N.Y.) (S.D.N.Y., 2001).

Moreover, because plaintiff's RICO complaint sounds in fraud, he must comply with Fed.R.Civ.P. 9(b) *CNBC, Inc. v. Alvarado*, 1994 WL 445717, *2 (S.D.N.Y.) (S.D.N.Y.,1994) ("Where the predicate acts of a civil RICO claim sound in fraud or mistake, the pleading of those predicate acts must satisfy the requirements of Fed.R.Civ.P. 9(b). *See Morin v. Trupin*, 711 F.Supp. 97, 111 (S.D.N.Y.1989). The more lenient standard of FRCP 8(a) applies to all other alleged acts. *McLaughlin*, 962 F.2d at 194.").

This plaintiff has failed to do. *Vista Co. v. Columbia Pictures Industries, Inc.* 725 F.Supp. 1286, 1301 (S.D.N.Y., 1989) ("Rule 9(b) requires that defendants be given notice of what they are charged with. *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir.1985). Defendants must be advised of "what statements were made, when, where and by whom they were made, in what manner the plaintiff was misled, and what the defendant obtained as a consequence." *Hotel Constructors, Inc. v. Seagrave Corp.*, 574 F.Supp. 384, 388 (S.D.N.Y.1983).").

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
JTLAND, VERMONT 05702

In *CNBC, Inc. v. Alvarado* 1994 WL 445717, 2 (S.D.N.Y.) (S.D.N.Y., 1994), the court held that when predicate acts involve wire or mail fraud, Rule 9(b) is applicable.

> As for the predicate acts of wire and mail fraud, FRCP 9(b) applies to these allegations. FRCP 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting fraud shall be stated with particularity." *See* FRCP 9(b). In the present case, plaintiff has listed the alleged communications that defendants mailed and faxed to CNBC, specifying only the date, number, and amount on each mailed invoice and only the date on each fax. Under FRCP 9(b), fraud allegations should specify the time, place, speaker and content of the alleged misrepresentation, *see DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987), unless this information is solely within the knowledge of defendants. *CNBC, Inc. v. Alvarado* 1994 WL 445717, 2 (S.D.N.Y. 1994).

Nor does the application of Rule 9(b) violate the liberal spirit of Rule 8 (a). FRCP 9(b) imposes a burden beyond FRCP 8(a)'s pleading requirement that the plaintiff need only give the defendant fair notice of its claim. Instead, FRCP 9(b) requires particularized allegations of the circumstances constituting fraud, *Miscellaneous Serv. Workers v. Philco-Ford Corp.*, 661 F.2d 776, 782 (9th Cir1981) (the pleader must state the "specific content of the false representations as well as the identities of the parties to the misrepresentations"). FRCP 9(b) applies equally to RICO claims. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir1989). Allegations of fraud which form the basis of a RICO claim must "identify the time, place, and manner of each fraud plus the role of each defendant in each scheme." *Id.* Federal courts interpret ORICO consistently with RICO. *Schnitzer v. Oppenheimer*, 633 F.Supp. 92, 99 (D Or 1985). Therefore, both the RICO and ORICO claims must comply with FRCP 9(b).

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
RTLAND, VERMONT 05702

Particularity under Rule 9(b) with regard to pleading wire [radio, television and perhaps Internet] or mail fraud requires that plaintiff, "must, at a minimum: (i) specify the statements that they contend were false or misleading; (ii) explain why the statements were fraudulent; (iii) state when and where the statements were made; and (iv) identify the speaker or speakers. *McLaughlin*, 962 F.2d at 191 (citing *Cosmas v. Hassett*, 886 F .2d 8, 11 (2d Cir.1989))." *Allen v. New World Coffee, Inc.*, 2001 WL 293683, 4 (S.D.N.Y.) (S.D.N.Y., 2001).

In this case, plaintiff has alleged in paragraph 40 of his complaint that, "Cicotte, by and through Performance, has conducted the criminal enterprises identified in #39 above across state borders in New Hampshire and Vermont, has conducted the criminal enterprises referenced in #39 above against residents of both New Hampshire and Vermont, and has used radio, television, and Internet modes of transmission to facilitate his criminal enterprise across state borders." It is not gainsaying that ¶ 40 is the epitome of the type of vague, general, conclusory allegations that are deemed insufficient in law under Rule 9 (b).

Conclusory allegations are insufficient to establish a RICO claim predicated upon wire fraud. *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 656 (S.D.N.Y.,1996) ("In order to plead a claim of mail fraud, a plaintiff must allege "factual circumstances giving rise to a strong inference that the defendant had the requisite fraudulent intent." *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F.Supp. 276, 281 (S.D.N.Y.1991) (citing, *inter alia*, *Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir.1990)). Because Plaintiffs' Second Amended Complaint and RICO Case Statement are devoid of any factual basis for their conclusory allegations of Defendants' fraudulent intent, the Complaint fails to allege a predicate act of mail fraud and will be dismissed under Rule 12(b)(6). *See Easton v. Sundram*, 1990

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
JTLAND, VERMONT 05702

WL 102231, at *77, 1990 U.S.Dist. LEXIS 8637, at *21-22 (S.D.N.Y.1990), *aff'd*, 947 F.2d 1011 (2d Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).").

Mere general conclusory allegations that are not tied to the alleged radio, television and Internet "criminal enterprise" do not satisfy Rule 9(b). Merely alleging "predatory sales techniques", "over-billing", "selling defective new and salvaged vehicles", "conspiring to defraud customers", "loan sharking", "altering agreements", "overcharging", "substandard operating procedures", "shoddy work", and instructing "how to 'scam' people on auto financing through the use of inflated monthly payment schedules rendered to buyers at lowered 'final' sales prices" are the kind of conclusory allegations that do not meet the spirit and requirements of Rule 9 (b), nor will such allegations survive a motion to dismiss. There is simply no allegations in the complaint how these vague, general, conclusory allegations are connected to the use of radio, television and Internet transmissions. *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.1988) (conclusory allegations of fraud that do not comply with Fed.R.Civ.P. 9(b) particularity requirements are a "fatal defect" when seeking to sustain a RICO claim); *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir.1994) ("conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim"); *Gott v. Simpson*, 745 F.Supp. 765, 770 (D.Me., 1990). The plaintiff must set forth an explanation as to why and how the statement or conduct complained of was false or misleading. *In re Glenfed, Inc. Secur, Litig.*, 42 F.3d 1541, 1548 (9th Cir1994). See also *Arboireau v. Adidas-Salomon AG*, L 1471748, 3-4 (D.Or., 2001).

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
RUTLAND, VERMONT 05702

Page 10 of 18

It has been said that the purpose of Rule 9 (b) is two-fold—to provide the defendant with sufficient information to frame an intelligent responsive pleading and to protect a defendant's reputation by allowing for dismissal of conclusory and baseless allegations of fraud.

> The rule is an important aspect of federal practice for several reasons. It serves to provide defendants with sufficient information concerning their alleged fraudulent conduct so that they may frame an intelligent and responsive pleading. *See Denny v. Barber*, 576 F.2d 465, 469-70 (2d Cir.1978). The rule can help protect a defendant's reputation by allowing for dismissal of conclusory and baseless allegations of fraud. *See Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982); *Ross v. A.H. Robins Co., Inc.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). *Ohman v. Kahn*, 685 F.Supp. 1302, 1307 (S.D.N.Y., 1988).

Another purpose of the rule might be the prevention of the waste of scarce judicial resources that are often expended in groundless cases, *see Crystal v. Foy*, 562 F.Supp. 422, 424 (S.D.N.Y.1983).

<u>THE RICO CLAIMS</u>

The law is well-settled that a plaintiff seeking to assert a RICO claim under 18 USC §§ 1962(a), (b) and (c) must demonstrate (1) the conduct, (2) of an enterprise, (3) through a pattern; (4) of racketeering activity. *Sun Sav. and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir.1987). In addition, other requirements apply to the specific subsections of RICO. *See* 18 U.S.C. §§ 1962(a), (b), (c), (d). In this case, the complaint fails to satisfactorily allege any RICO racketeering activity—an essential element of every RICO claim—and is therefore fatally defective. Racketeering activity "is any act indictable under various provisions of 18 U.S.C. § 1961." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1481 (9th Cir.1997).

MILLER FAIGNANT & BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
RUTLAND, VERMONT 05702

As has been demonstrated, vague and conclusory allegations of misprision of a felony, or wire fraud are insufficient. Simply stated, the complaint is devoid of any satisfactory allegations of racketeering activity. With respect to mail or wire fraud, plaintiff must prove a scheme to defraud with the specific intent to defraud. *Forsyth*, 114 F.3d at 1480; 18 U.S.C. § 1341, and there is nothing properly pleaded in the complaint to support such a scheme.

It has been stated that Congress did not intend to turn garden variety disputes into criminal acts sufficient to justify a RICO claim *see Smith v. Jackson*, 84 F.3d 1213 (9th Cir.1996) (garden variety copyright infringement claim should not be transformed into RICO action); *Grauberger v. St. Francis Hospital*, 169 F.Supp.2d 1172, 1177 (N.D.Cal., 2001) (garden variety statutory interpretation claim should not be transformed into RICO action).

Therefore, the courts have not interpreted the RICO statutes literally; rather they have interpreted the RICO statutes to "avoid absurd applications."

> Read literally, RICO would encompass every fraud case against a corporation, provided only that a pattern of fraud and some use of the mails or of telecommunications to further the fraud shown; the corporation would be the RICO person and the corporation plus the employees the 'enterprise.' The courts have excluded this far-fetched possibility by holding that an employer and its employees cannot constitute a RICO enterprise. E.g., *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063 (2d Cir. 1996); *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 268 (3d Cir. 1995); *Riverworks Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 343-44 (2d Cir. 1994). *** When a statute is broadly worded in order

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
RTLAND, VERMONT 05702

to prevent loopholes from being drilled in it by ingenious lawyers, there is a danger of its being applied to situations absurdly remote from the concerns of the statute's framers. Courts find it helpful, in interpreting such statutes in a way that will avoid absurd applications--a conventional office of statutory interpretation, even under "plain language" approaches, e.g., *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69-70, 115 S.Ct. 464, 467-68, 130 L.Ed.2d 372 (1994); *Public Citizen v. United States Department of Justice*, 491 U.S. 440, 454-55, 109 S.Ct. 2558, 2566-67, 105 L.Ed.2d 377 (1989); *United States v. Thomas*, 77 F.3d 989, 991 (7th Cir.1996) (per curiam)-- first to identify the prototype situation to which the statute is addressed. That need not be the most common case to which it is applied; the prototype may be effectively deterred because its legal status is clear. The second step is to determine how close to the prototype the case before the court is--how close, in other words, the family resemblance is between the prototypical case and the case at hand. Cf. *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993). The prototypical RICO case is one in which a person bent on criminal activity seizes control of a previously legitimate firm and uses the firm's resources, contacts, facilities, and appearance of legitimacy to perpetrate more, and less easily discovered, criminal acts than he could do in his own person, that is, without channeling his criminal activities through the enterprise that he has taken over. *United States v. Turkette*, 452 U.S. 576, 591, 101 S.Ct. 2524, 2532-33, 69 L.Ed.2d 246 (1981); *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 457 (7th Cir.1982); *United States v. Carson*, 52 F.3d 1173, 1176-77 (2d Cir.1995). A step away from the prototypical case is one in which the criminal uses the acquired enterprise to engage in some criminal activities but for the most part is content to allow it to continue to conduct its normal, lawful business--and many of the employees of the business may be unaware that it is controlled and being used by a criminal. E.g., *United States v. Robinson*, 8 F.3d 398, 407 (7th Cir.1993). *Fitzgerald v. Chrysler Corporation*, 113 F.3d 225, 228 (C.A.7 (Ill.),1997).

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
RUTLAND, VERMONT 05702

In this case, plaintiff has alleged that Performance Marketing, Inc. is a RICO organization and that David Cicotte is an employee of Performance and manager of Miller Auto Group. A corporation can act only through its agents, or employees, it must act through people. A corporate officer is an employee of the corporation. "RICO, however, is not a conspiracy statute. Its draconian penalties are not triggered just by proving conspiracy. "Enterprise" connotes more." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (C.A.7 (Ill.), 1997). Thus plaintiff in this case has failed to establish and plead an "enterprise", required by § 1962 (c), has infiltrated Performance Marketing, Inc. A corporation and its employees engaged in the corporations business do not constitute an "enterprise" separate and distinct from the corporation. The complaint fails to satisfy the RICO statute.

> Because a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality no more than the defendant itself. *See Brittingham [v. Mobil Corp., 943 F.2d 297, 301 (3rd Cir.1991) ] Thus, where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.*
>
> *Riverwoods*, 30 F.3d at 344 (citations omitted). The non-identity requirement "would be eviscerated if a plaintiff could successfully plead that the enterprise consists of a defendant corporation in association with employees, agents, or affiliated entities acting on its behalf." *Brittingham v. Mobil Corp.*, 943 F.2d 297, 301 (3rd Cir.1991). " '[A]n organization cannot join with its own members to do that which it normally does and thereby form an enterprise separate and apart from itself.' " *Kable News*, 775 F.Supp. at 636 (quoting *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132, 141 (D.C.Cir.1989)).

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
RTLAND, VERMONT 05702

In the instant action, plaintiff has made no allegation that AT & T, its subsidiaries, and the named employees were associated in any manner apart from the activities of AT & T. Plaintiff has attempted to plead a RICO violation in what is essentially a routine commercial dispute. The RICO persons enumerated by plaintiff and the entities that purportedly constitute the associated-in-fact RICO enterprise, are not distinct. Plaintiff's pleadings do not portray the infiltration of a business by racketeers. The enterprise is, in reality, no more than the defendants themselves.

The situation present here is similar to that present in *Brittingham*, where the court ruled that the alleged enterprise was not distinct from the defendants and stated that "a § 1962(c) enterprise must be more than an association of individuals or entities conducting the normal affairs of a defendant corporation." *Brittingham*, 943 F.2d at 301. *C.A. Westel de Venezuela v. American Tel. & Tel. Co.*, 1994 WL 558026, 7 (S.D.N.Y.) (S.D.N.Y., 1994).

The Second Circuit made that position very clear in *Cedric Kushner Promotions, Ltd. v. King*, 219 F.3d 115, 116 (C.A.2 (N.Y.), 2000).

Section 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). It is well established in this Circuit that, under § 1962(c), the alleged RICO "person" [FN2] and RICO "enterprise" must be distinct. *See Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 89 (2d Cir.1999); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 343-45 (2d Cir.1994); *Bennett v. U.S. Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985).

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
RTLAND, VERMONT 05702

In *Riverwoods*, we applied the distinctness requirement to find that a bank--effectively the RICO enterprise and the sole defendant--could not be held liable under § 1962(c) when the RICO persons identified were the bank and bank employees acting within the scope of their employment. We explained that the distinctness requirement could not be circumvented by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant.... Because a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality no more than the defendant itself. Thus, where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.

In addition to its other deficiencies, plaintiff's complaint is also fatally defective for failing to comply with the distinctness requirement of § 1962 (c) and should be dismissed. Like the court in *In re MasterCard, supra.* the plaintiff's burdens are insurmountable and leave to amend would not assist him. Dismissal of the RICO complaint under Rule 12 (b)(6) is warranted.

The Court is mindful that motions to dismiss should be rarely granted. However, in this case, plaintiffs fail to plead several elements necessary to sustain a RICO claim as a matter of law, including failure to allege any racketeering activity, the existence of an enterprise, the requisite level of conduct or control, and standing. The defects in plaintiffs' complaints appear insurmountable. With such a legally flawed cause of action, the Court must dismiss plaintiffs' RICO claims without leave to amend. *See e.g., Hart v. Bayer Corp.*, 199 F.3d 239, 248, note 6 (5th Cir.2000) (court should not generally dismiss without leave to amend unless defect is simply incurable); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 983 (9th Cir.2000) (leave to

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
JTLAND, VERMONT 05702

amend must be granted unless amendment would be futile); *Confederate Memorial Association v. Hines*, 995 F.2d 295, 299 (D.C.Cir.1993) (district court acted properly when it failed to grant leave to amend granting motion to dismiss when dismissed party does not indicate particular grounds and dismissed party previously brought same suit in another court); Wright & Miller, *Federal Practice & Procedure*, § 1483, p. 588.

## JOHN DOES 1-4

Plaintiff is a resident of Stratford, Vermont. Plaintiff alleges diversity jurisdiction over John Does 1-4 however, plaintiff has failed to properly invoke diversity jurisdiction over the John Doe defendants because plaintiff alleges that "Does could be either New Hampshire or Vermont residents" and that the amount is controversy is in excess of $50,000.00. Diversity of citizenship must affirmatively appear in the complaint; it cannot be presumed or pleaded in the alternative and the requirement of 28 U.S.C § 1332 (a) is not met in ¶ 10 of the complaint.

> Where the only asserted basis of federal jurisdiction is diversity of citizenship, this is not sufficiently set forth by alternative allegations of fact on one of which diversity of citizenship would exist and on the other not. *Keene Lumber Co. v. Leventhal*, 165 F.2d 815, 823 (C.A.1 1948).

Diversity jurisdiction is not properly invoked by the allegations of the complaint. Since the trial court is obliged to raise subject-matter jurisdiction *sua sponte* if the parties do not, the moving defendants call it to the court's attention as a friend of the Court, with regard to the diversity claim against the John Doe defendants.

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
UTLAND, VERMONT 05702

Page 17 of 18

## CONCLUSION

For all of the foregoing reasons, Performance Marketing, Inc. and David Cicotte request the court to dismiss the RICO complaint against them in its entirety.

Dated at Rutland, Vermont this 15th day of July 2004.

                                                    PERFORMANCE MARKETING, INC.
DAVID CICOTTE

By _____
    John Paul Faignant, Esquire
    Miller Faignant & Behrens, P.C.
    36 Merchants Row
    Rutland, Vermont 05702-6688
    (802) 775-2521
    Fed. ID. #: 000480988

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
RUTLAND, VERMONT 05702

Page 18 of 18

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| SCOTT TRAUDT,<br>      Plaintiff<br><br>v.<br><br>DAIMLER CHRYSLER MOTORS<br>COMPANY, LLC, PERFORMANCE<br>MARKETING, INC., DAVID CICOTTE,<br>MECHANICS JOHN DOES 1-4,<br>      Defendants | Civil Action<br>Docket No: 1:04-CV-53 |

## CERTIFICATE OF SERVICE

NOW COME Defendants Performance Marketing, Inc., and David Cicotte, by and through their attorneys, Miller, Faignant & Behrens, P.C., and pursuant to V.R.C.P. 5(d) certifies that on July 15, 2004, Defendants' Rule 12(b)(6) Motion to Dismiss RICO Claims was served upon:

    Scott Traudt, Pro Se Plaintiff
    191 Kibling Hill Road
    Strafford, VT 05072

by forwarding a copy to him via U.S. Mail, postage prepaid.

DATED at the City of Rutland, County of Rutland, and State of Vermont this 15 day of July, 2004.

    MILLER, FAIGNANT & BEHRENS, P.C.

    By: _____
    John Paul Faignant, Esquire
    Attorney for Defendants
    Performance Marketing, Inc. and
    David Cicotte

MILLER FAIGNANT
& BEHRENS P.C.
ATTORNEYS AT LAW
P. O. BOX 6688
36 MERCHANTS ROW
RUTLAND, VERMONT 05702